MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2024 ME 40
Docket:        Cum-23-278
Submitted
  On Briefs:   January 24, 2024
Decided:       May 23, 2024

Panel:         MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

TAMMY RUTLEDGE et al.

v.

PAMELA MENARD et al.

DOUGLAS, J.

[¶1]  Tammy and James Rutledge appeal from a judgment entered in the District Court (Bridgton, *Malia, J.*) dismissing with prejudice their complaint seeking to recover personal property from Pamela Menard and Randall Nappi. *See* 14 M.R.S. § 7071(1)-(2) (2024).  The Rutledges argue that the court erred or abused its discretion by imposing the ultimate sanction of dismissal with prejudice for their failure to appear for a hearing and by denying their post-judgment motion requesting that the court either reopen the matter or amend the judgment to a dismissal without prejudice.  *See* M.R. Civ. P. 59(a), (e). We conclude that the circumstances do not support dismissal with prejudice and vacate the judgment.

2

## I. BACKGROUND

[¶2]  When two or more persons claim a right to personal property, a claimant may bring a civil action in the District Court to resolve the dispute. 14 M.R.S. § 7071(1). Before March 2020, a claimant commencing such an action was required to follow the instructions contained in Form CV-182, a form published by the State of Maine Judicial Branch.  Form CV-182 directed a plaintiff in such an action to obtain a complaint and a summons from the Clerk of the District Court and explained that the date on the summons is "the date on which [the] case will be heard."

[¶3]  Beginning in March 2020, in response to the public health and safety concerns caused by COVID-19, the Judicial Branch issued a series of Pandemic Management Orders (PMOs) that, among other things, mandated the use of remote hearings for most types of proceedings.  *See, e.g.*, PMO-SJC-7 State of Maine Judicial Branch Pandemic Management Order (July 29, 2020) (providing that the format for court proceedings is presumed to be remote).  For actions to recover personal property, the Judicial Branch replaced Form CV-182 with a new instruction form, Form CV-218.  The new instruction form required that a plaintiff serve a defendant with an information sheet on court process and an instruction sheet on video conferencing in addition to serving the usual

summons and complaint. The information sheet described the first step of the court process as follows:

> **Step One: Telephonic Status Conference** – The first court event in this case is a telephone conference. The Summons and Complaint or the Scheduling Notice received with this Information Sheet tells you the date and time of the phone conference and the number to call. All court notices are sent to the address listed on the complaint. **If you get your mail at a different address you should tell the Court right away.**
>
> When you call, you will meet by phone with a judge and the other party, or the other party's attorney, or both. At the phone conference, the judge will talk with both sides to decide what happens next in your case. If you and the other party have an agreement, this call is the time to talk about that agreement with the judge. If you do not have an agreement, the judge may schedule the case for mediation or a hearing. You may tell the court if you prefer to attend future court events by phone or by video.

[¶4] In June 2021, however, because circumstances had improved and public health concerns had abated, the Maine Supreme Judicial Court rescinded most of the PMOs, including PMO-SJC-7. *See* PPMO-SJC-1 State of Maine Judicial Branch Post-Pandemic Management Order (June 1, 2021). The mandate that most court proceedings be held remotely was lifted, and the Maine Supreme Judicial Court vested trial courts with discretion in deciding whether to conduct conferences, hearings, and trials remotely or in person.[1] *Id.*; *see also*

---

[1] PPMO-SJC-1 has since been amended several times. PPMO-SJC-1 State of Maine Judicial Branch Post-Pandemic Management Order (revised Mar. 30, 2023).

PPMO-SJC-2 State of Maine Judicial Branch Post-Pandemic Management Order (June 1, 2021) (establishing protocols "to ensure that participation in remote proceedings complies with due process and proper procedure").

[¶5]  In May 2023, the Rutledges commenced an action for recovery of personal property—a pressure-treated boat dock—against Menard and Nappi. *See* 14 M.R.S. § 7071(2); M.R. Civ. P. 3(a).  Even though most court proceedings had been held in person for some time, the Judicial Branch's website still indicated that Form CV-218 contained the current instructions for this type of action.  Following the protocol in Form CV-218, the Rutledges had Menard and Nappi served with a complaint, a summons, and the additional forms listed in Form CV-218.  The court-issued summons, however, directed Menard and Nappi, or their attorney, to appear before the District Court on June 14, 2023, at 9:00 a.m., if they wished to oppose the action.  The summons provided the address of the court and warned that a failure to appear could result in the entry of a judgment by default against them.[2]  The Rutledges' attorney filed the proof of service with the court the day before the scheduled hearing.

[¶6]  On the morning of June 14, 2023, the Rutledges, mistakenly believing that the initial court proceeding would be a telephonic status

---

[2] The summons did not indicate what type of proceeding would be held.

conference, were prepared to appear by phone, and their attorney called the clerk to obtain the call-in number. Upon learning that the proceeding was in person, the Rutledges' attorney requested that they be allowed to appear remotely or, alternatively, that the court delay the hearing to allow sufficient time for them to travel to the courthouse or continue the hearing to another day.

[¶7] Meanwhile, Menard and Nappi appeared in person and were prepared to go forward with an evidentiary hearing.[3] Because the Rutledges failed to appear in person, the court entered a judgment dismissing the matter with prejudice. The judgment stated:

> Plaintiffs failed to appear. Plaintiff's attorney failed to appear. This judgment was entered at 10:00 (case was called at 9:00). Defendants were present with witnesses.

[¶8] The Rutledges timely moved the court to either reopen the case or amend the judgment to a dismissal without prejudice. *See* M.R. Civ. P. 59(a), (e). The Rutledges argued that the court's ruling was inconsistent with the Judicial

---

[3] After they were served with the summons and complaint, Menard and Nappi filed a motion to dismiss, asserting that the boat dock at issue was annexed to their realty and adapted to the use of their land, and therefore an action for recovery of personal property was "not [the] appropriate legal mechanism" to resolve the dispute between the parties.

6

Branch's policy of encouraging remote proceedings and contrary to the instructions provided on the form contained on the Judicial Branch's website.

[¶9] The court denied the motion, concluding that the Rutledges had erroneously relied upon the protocol set forth in Form CV-218. The court observed that Form CV-218 warned that those instructions were to be used only while COVID-19 procedures and the related pandemic management orders were in effect and that, because those procedures and orders had been rescinded, Form CV-218 was "no longer in effect."

[¶10] The Rutledges timely appealed. *See* 14 M.R.S. § 7071(8); 4 M.R.S. § 57 (2024); M.R. App. P. 2B(c)(2)(C)-(D).

## II. DISCUSSION

[¶11] The Rutledges argue that the court erred by finding that they failed to appear and abused its discretion by dismissing their complaint with prejudice and by denying their Rule 59 motion.

[¶12] A trial court's dismissal of an action and denial of a Rule 59 motion are decisions that are generally reviewed for an abuse of discretion. *Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶ 12, 158 A.3d 931. "Our review for an abuse of discretion involves three questions: (1) whether the court's factual findings are supported by the record according to the clear error standard, (2) whether

the court understood the law applicable to the exercise of its discretion, and (3) whether the court's weighing of the applicable facts and choices was within the bounds of reasonableness." *Id.* (quotation marks omitted).

[¶13]  Contrary to the Rutledges' contention, the court's finding that they failed to appear is supported by the record.  The court correctly found that the type of proceeding in question had returned to an in-person format and that the protocol described in Form CV-218 was no longer being followed.  As the court observed, the form prominently displayed a notice advising litigants that the instructions were to be used only while COVID-19 procedures were in effect, and neither the Rutledges nor their attorney had been advised that they would not have to appear in person for the hearing.[4]

[¶14]  In exercising its discretion to determine what sanction, if any, should be imposed for a party's failure to appear, a court must, so to speak, "fit the punishment to the crime." *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 16, 743 A.2d 237.  Dismissing an action for a party's failure to appear is within the court's inherent authority.  *See Westbrook v. Wallace*, 478 A.2d 687, 689 (Me. 1984) (holding that "the dismissal of an action for failure to prosecute is

---

[4] The Rutledges suggest that when they filed the return of service the day before the hearing, the clerk should have advised them that the hearing would be in person and not remote.  There is no indication in the record that the Rutledges or their attorney asked for clarification about the process.

within the discretion of the trial court and that such a dismissal will be reversed only where abuse of discretion is found"); *Phillips v. Fuller*, 524 A.2d 1221, 1222 (Me. 1987) (recognizing a court's "inherent power to consider the sanction of dismissal for failure to appear and prosecute"). A court's decision to dismiss a matter with prejudice as a sanction, however, "will be given close scrutiny on appeal." *U.S. Bank Nat'l Ass'n v. Manning*, 2014 ME 96, ¶ 12, 97 A.3d 605 (quotation marks omitted); *see also Baker's Table*, 2000 ME 7, ¶ 16, 743 A.2d 237 (holding that a dismissal with prejudice is a "drastic" sanction that will be closely scrutinized (quotation marks omitted)).

[¶15] Applying close scrutiny here, we conclude that a dismissal with prejudice was, in the circumstances presented here, too "drastic" a sanction, for two reasons. *Baker's Table*, 2000 ME 7, ¶ 16, 743 A.2d 237; *see Saucier v. State Tax Assessor*, 1998 ME 61, ¶¶ 6-7, 708 A.2d 281 (concluding that a dismissal as a sanction for a discovery violation was "overly harsh" where the plaintiff, though "not blameless," had a good faith and legally justifiable basis for believing that the proceedings had been stayed). First, after PMO-SJC-7 was rescinded and court proceedings returned to an in-person format, the Judicial Branch website continued to direct parties to Form CV-218 even though it no

longer reflected current court practices. This oversight contributed to the Rutledges' mistaken belief that led to their nonappearance.[5]

[¶16] Second, the Rutledges' nonappearance was neither deliberate nor the result of misconduct, and they made a sustained effort to remedy their error. On the morning of the hearing, the Rutledges were prepared to participate remotely, and their attorney called the court twice before the docket was called. Upon learning that the court would be holding the hearing in person, they requested either a delay in calling the case to give them sufficient time to travel to the courthouse or, alternatively, a continuance to another day—requests that, in the circumstances, were not unreasonable. Although Menard and Nappi would have been inconvenienced by a continuance, there is nothing in the record to suggest that they would have suffered any prejudice or that the court's resources would have been greatly impacted. Finally, imposing the ultimate sanction of dismissal with prejudice against the Rutledges did not serve the functions of sanctions. *See Unifund CCR Partners v. Demers*, 2009 ME 19, ¶¶ 11, 14, 966 A.2d 400 (noting that the purposes of a sanction—"to

---

[5] Despite the instructions in Form CV-218, the Rutledges and their attorney perhaps should have been alerted by the attendant circumstances that the hearing would be held in person. By that time, most court proceedings were being held in person, consistent with the post-pandemic management orders. And the court-issued summons did not include a call-in number and required that Menard and Nappi appear in person or risk entry of a default judgment against them. If the Rutledges or their attorney had at least made an inquiry ahead of time, they could have avoided their error.

penalize non-compliance, remedy the effects of non-compliance, and to serve as a deterrent"—were not served by a dismissal with prejudice where a party failed to appear for a pretrial conference).

[¶17] In these circumstances, we hold that a dismissal of the case with prejudice was not warranted.

The entry is:

> Judgment vacated. Remanded to the District Court for entry of a judgment of dismissal without prejudice.

---

Sean P. Joyce, Esq., Joyce & Joyce, LLC, Bristol, for appellants Tammy and James Rutledge

Pamela Menard, appellee pro se

Randall Nappi, appellee pro se

Bridgton District Court docket number SA-2023-89
FOR CLERK REFERENCE ONLY